UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


DAVID A BUTLER,

                    Petitioner,

-vs-                                  Case No.  8:05-cv-2133-T-17TBM

SECRETARY, DEPT. OF CORRECTIONS,

                    Respondent.

_____/

## **ORDER**


Before this Court is a pro se petition for writ of habeas corpus filed by a Florida prisoner challenging his state judgment of conviction for possession of cocaine which arises out of the Sixth Judicial Circuit, Pinellas County in case no. 02-02681CFANO.  A review of the record demonstrates that, for the following reasons, Butler's petition must be denied.

Background

David Butler was charged with possession of cocaine in case no. CRC01-2681CFANO. Electing the right of self-representation, Butler proceeded pro se to jury trial on July 25, 2002, and was convicted as charged. He was sentenced to five years prison. Butler appealed, and again, litigated four issues, pro se. On February 6, 2004, the state district court affirmed without written decision in case no. 2D02-4982. *Butler v. State*, 873 So. 2d 329 (Fla. 2d DCA 2004)[table].

Butler filed a pro se motion for postconviction relief dated November 16, 2004, under Florida Rule of Criminal Procedure 3.850 in which he raised six grounds for relief from his judgment in case no. CRC02-02681CFANO. By a detailed order rendered February 15, 2005, the postconviction court denied the rule 3.850 motion without an evidentiary hearing. Butler appealed the summary order, and on August 17, 2005, the state district court per curiam affirmed without written decision in case no. 2D05-1616. Butler v. State, 910 So. 2d 265 (Fla. 2d DCA 2005)[table]. The mandate issued September 12, 2005.

Butler's present 28 U.S.C. § 2254 petition, dated November 1, 2005, is timely filed.

Standards of Review

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*  However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

Discussion

Ground One

Butler contends he was denied due process as a result of alleged noncompliance with Florida rules governing the time frame for determining Butler's competency to proceed. Claiming he was diagnosed as a paranoid schizophrenic at the time of his arrest, Butler asserts the state trial court at his first appearance ordered a competency evaluation. Butler alleges he was placed on medication and stabilized so as to function rationally while in jail for some five months. According Butler, this ran afoul of state procedural rules providing that a hearing to determine competency be held within twenty days, which he frames as a state-created "liberty" right. Butler complains that as a result of denial of such right, he was denied a right to his own defense and a speedy trial, lamenting that he could have demanded speedy trial under Florida's speedy trial rule four months and ten days sooner than he was tried. Although couched in constitutional terms, ground one presents state law issues for which federal habeas corpus relief does not lie.

Butler does not claim he was denied the right to counsel prior to trial. Nor does he allege that his constitutional right to a speedy trial was infringed. Further, he does not raise

procedural or substantive federal due process claims regarding the matter of his competency at the time of his jury trial. *See Drope v. Missouri*, 420 U.S. 162 (1975); *Pate v. Robinson*, 383 U.S. 375 (1966); *Dusky v. United States*, 362 U.S. 402 (1960).[1]

Rather, Butler seeks to challenge state procedural rules concerning "gestation" of a competency determination and a demand for a speedy trial to constitutional due process proportion. Determination of whether the state court complied with Florida law governing the time line for inquiry into and determination of competency and/or whether there was any interference with the right to demand a speedy trial under Florida's speedy trial provisions are solely matters within the province of the Florida courts. *See e.g., Davis v. Wainwright*, 547 F.2d 261 (5th Cir. 1977)(no relief for violation of state speedy trial rule).

A state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state's interpretation of its own rules or statutes does not raise a federal constitutional issue. *Wainwright v. Goode*, 464 U.S. 78 (1983), *reh'g denied*, 465 U.S. 78 (1984). The writ of habeas corpus, 28 U.S.C. § 2254, was not enacted to enforce state-created rights. *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000). Even when a petition which actually involves state law issues is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force. *See Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir. 1976).

---

[1] If, and to the extent he were to raise these claims, they would be procedurally barred because the claims could and should, if at all, have been raised as constitutional claims on direct appeal.

Moreover, any Sixth Amendment speedy trial claim is now procedurally barred because Butler did not specifically raise that claim at trial and on appeal. He did not timely ask the trial court to discharge him on the basis of the Speedy Trial Clause of the Sixth Amendment. Moreover, his state law arguments did not suffice to exhaust a federal question. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995)("Exhaustion of state remedies requires that the state prisoner fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.").

Butler's generalized due process arguments did not present the trial and appellate courts a Sixth Amendment speedy trial claim. By not raising this claim with particularity, he deprived the state courts of a full and fair opportunity to resolve any Sixth Amendment-based speedy trial claim by invoking one complete round of the State's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 814 (1999).

In Florida, postconviction motions cannot be used as a second appeal for issues that were or could have been raised on direct appeal. *Parker v. State*, 611 So. 2d 1224 (Fla. 1992). This Circuit has long recognized this aspect of Florida law. *See Sullivan v. Wainwright*, 695 F.2d 1306, 1310 (11th Cir.)(claims that could have been or should have been preserved at trial and then raised on direct appeal and were not are procedurally barred), *cert. denied*, 464 U.S. 922 (1983); *Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir.)(under Florida law, an issue which could have been raised on direct appeal may not be reviewed in a Rule 3.850 motion), *cert. denied*, 498 U.S. 832 (1990).

Because any constitutional speedy trial claim is procedurally barred, the Court cannot hear the claim unless Butler can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, *Wainwright v. Sykes*, 433 U.S. 72 (1977), or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 72, 29-30 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Cause must ordinarily be something external to the defense. *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995), and allegations of cause are subject to default. *See Edwards v.Carpenter*, 529 U.S.446, 453(2000)(ineffective assistance of counsel claim asserted as cause for procedural default of another federal claim could itself be procedurally defaulted).

In this case, Butler has not shown cause for failing to raise, in state court, a constitutional speedy trial claim in a timely manner at trial and on appeal.  Butler does not meet the fundamental miscarriage of justice exception. His trial delay claim does not implicate actual innocence, nor does Butler offer any new evidence of innocence in his federal petition. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995).

Even if Butler's due process argument were not barred, the claim has no merit. Butler does not show the state court decision resulted in an unreasonable application of clearly established federal law as determined by the Supreme Court.

Due process requires that a defendant be competent to stand trial. *Godinez v. Moran*, 509 U.S. 389, 402-03 (1993); *see also, Medina v. California*, 505 U.S. 437, 453 (1992) (criminal trial of an incompetent defendant violates due process). "The failure to observe procedures adequate to protect a defendant's right not to be tried or convicted

while incompetent to stand trial deprives him of his due process right to a fair trial." *Pate v. Robinson*, 383 U.S. 375, 384-85 (1966).

Butler's case does not concern delay implicating retrospective competency determination. *See Drope*, 420 U.S. at 183; *Pate*, 383 U.S. at 387 (inherent difficulty of retrospectively determining competency aggravated by six year delay). Although Butler attempts to find a due process right to Florida's time frame for determining competency to stand trial, there is no federal due process guarantee that the Florida courts must resolve the matter of competency using the state's time period. Just as the right to a speedy trial from a constitutional standpoint is not restricted by time periods established by state rules of procedure, *see Routly v. Singletary*, 33 F.3d 1279, 1291 (11th Cir. 1994)(noting that "...nowhere in the United States Constitution is there found a right to be brought to trial within 180 days."), *cert. denied*, 515 U.S. 1166 (1995), the Due Process Clause does not guarantee enforcement of a state deadline for inquiring into competency. *See Spencer v. Texas*, 385 U.S. 554, 563-564 (1967)[("Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial. . . . But it has never been thought that such cases establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure") (citations omitted)].[2]

Butler states he was placed on medication and stabilized to be able to function rationally. Suspension of criminal proceedings until his mental competency to stand trial

---

[2] See also, *Dowling v. United States*, 493 U.S. 342, 352 (1990)("Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.").

was no longer at issue was an objectively reasonable application of *Dusky* and its progeny. *See Dusky v. United States*, 362 U.S. 402 (1960)(defendant is competent to stand trial if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - and [if] he has a rational as well as factual understanding of the proceedings against him").

Pointing to his pro se requests to discharge his appointed trial counsel, Butler claims he was denied the right to conduct his own defense. (Dkt. 1 at 5). A defendant has a constitutional right to waive his right to counsel and to represent himself at trial. *Faretta v. California*, 422 U.S. 806, 817 (1975). However, to be valid, the trial court must ensure that the defendant's waiver of his right to counsel is done knowingly and intelligently, so that the record establishes that the defendant's choice was made "with his eyes open." *Faretta*, 422 U.S. at 835. Because the degree of competence necessary for a defendant to waive counsel is the same degree of competence required for him to stand trial, *Godinez v. Moran*, 509 U.S. at 399-400, it is objectively reasonable to ascertain that a defendant such as Butler is competent to stand trial before allowing him to discharge counsel and represent himself.

Butler contends that he was denied the right under state law to demand speedy trial for over four months and that this action amounted to a denial of due process. This state-law based claim does not implicate due process concerns. The Fifth Amendment Due Process clause protects against "oppressive" pre-indictment delay. *United States v. Lovasco*, 431 U.S. 783, 788 (1977). The Speedy Trial Clause of the Sixth Amendment imposes restraints on the length of post-accusation delay. *Lovasco,* 431 U.S. at 792. Butler

did not claim in state court there was any inordinate delay before he was arrested or the charge against him filed. Nor did he bring a delay claim under the Sixth Amendment right to a speedy trial.

Even if, the Sixth Amendment speedy trial claim were not procedurally barred, Butler's claim has no merit. Constitutional speedy trial analysis employs a balancing test comprised of four factors: "(i) the length of the delay; (ii) the reason for the delay; (iii) the defendant's assertion of his right; and (iv) the prejudice to the defendant resulting from the delay." *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *see also Doggett v. United States,* 505 U.S. 647, 651 (1992) (discussing the *Barker* factors and their application). In *Barker*, the Court also noted that "the length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530.  Although there is a right to a "speedy" trial found in the Sixth Amendment, this right is "a more vague concept than other procedural rights." *Barker*, 407 U.S. at 521.

The first factor, length of delay, is critical, for unless the delay was long enough to be "presumptively prejudicial" the remainder of the analysis will not be undertaken. *Barker*, 407 U.S. at 530. Butler was tried well within constitutional limits, and it is objectively reasonable to conclude the first *Barker* factor does not weigh in his favor. Even if the second and third factors are analyzed, the outcome favors the State.

At Butler's first appearance, the state court, aware of Butler's actions at the time of his arrest, appointed an expert to assess Butler's competency. The order did not provide for a determination of competency to proceed under Rule 3.210(b). The period under the

rule was not triggered until March 15, 2002, when Butler's court-appointed counsel filed a motion to determine his competency to proceed. The hearing on the request was held within twenty days, on March 28, 2002, in accordance with rule 3.210(b). Shortly thereafter, an order appointing Dr. Barron dated April 3, 2002, issued.

Butler's first waiver of counsel and demand for speedy trial was filed on March 15, 2002, while he was still represented by the public defender, and was a nullity under state law[3].  A second expert was appointed on May 6, 2002. On May 16, 2002, Butler's court-appointed counsel filed a motion to withdraw from representation upon Butler's request, and a hearing was held on the motion on May 24, 2002. On May 31, 2002, Butler filed another demand for speedy trial, still represented by counsel. The court granted Butler's pro se motion to withdraw counsel on June 4, 2002, and Butler was tried on July 25, 2002.

The state decision settles that, under the circumstances of Butler's case, there was no violation of Florida's speedy trial provisions. Indeed, Butler conceded the state speedy trial period did not expire until August 2, 2002, in his "Notice of Expiration of Speedy Trial Time." Resp. Ex. 1. V 2 R 145.

Moreover, the length of time before trial commenced is constitutionally acceptable, particularly in view of initial concern concerning his Butler's competency. *See e.g., United*

---

[3] Pursuant to Fla. R. Crim. P. 3.191(g), a demand for speed trial is deemed a pleading by the accused that he is available for trial, has diligently investigated his case, and is prepared for trial within 5 days. Florida courts have, in several instances, refused to give legal significance to a pro se demand under rule 3.191 when the defendant was represented by counsel. *See e.g. Burke v. State*, 732 So. 2d 1194 (Fla. 4th DCA 1999)(pro se demand for speedy trial filed while he was represented by counsel was a nullity; there is no absolute right to self-representation and a represented defendant must first obtain court's consent in order to also represent himself. However, a motion to discharge counsel filed by a represented defendant, would not first require the court's consent); *Thompson v. State*, 615 So. 2d 737 (Fla. 1st DCA 1993)(pro se motion for discharge filed when defendant was represented by counsel was a nullity); *Salser v. State*, 582 So. 2d 12 (Fla. 5th DCA 1991)(pro se motions to discharge and dismiss charges were invalid since they were not signed by public defender who appeared on defendant's behalf).

*States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) (period of evaluating defendant's incompetency not attributable to state). Butler's allegations reflect he believes that during his time in jail, he was stabilized with medication. (Dkt. 1 at 5). In any case, it is objectively reasonable to conclude *Barker*'s second two factors did not weigh so heavily against the State as to make proof of specific prejudice by Butler unnecessary. The delay was not extraordinary in any regard; most of the delay was attributable to Butler, given that the hearing was held soon after his counsel sought a hearing; Butler did not timely assert his constitutional speedy trial right; and he did not plead sufficient facts which would show prejudice resulted directly from delay and not from other reasons. *See Barker, supra*, at 533-34 (while five-year delay was extraordinary and the delay was mostly attributable to the State's failure to provide a speedy appeal, there was no violation of the speedy trial right because there was minimal prejudice; and lack of a timely assertion of the speedy trial right weighed against the petitioner).

The state record bears out the reasonable conclusion that Butler' ability to be prepared and present a defense at trial was not impaired due to any delay. Accordingly, the state decision resulted in a reasonable application of *Barker* and its progeny and a reasonable determination of the facts in light of the evidence.

Ground one does not warrant habeas corpus relief.

### Ground Two

Butler contends his confession was involuntary. According to Butler, he was incompetent at the time of his arrest and unable to understand and waive his constitutional rights. The state decision on his ground, treated as exhausted to the extent raised in the

suppression hearing, at trial, and on direct appeal, resulted in a reasonable application of clearly established federal law as determined by the Supreme Court and a reasonable determination of the facts in light of the evidence.

A defendant's waiver of his constitutional rights is valid if it is voluntary, knowing, and intelligent. *Miranda v. Arizona*, 384 U.S. 436, 444, 475 (1966). In *Moran v. Burbine*, 475 U.S. 412 (1986), the Supreme Court explained the two-part inquiry into whether a defendant's waiver of *Miranda* rights was voluntary, knowing, and intelligent.

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Id.* at 421 (quoting *Fare v. Michael C.*, 442 U.S. 707 (1979)(citations omitted). In conducting the "totality of the circumstances" test, a court should consider factors such as: police coercion; length of interrogation; location of interrogation; continuity of interrogation; the suspect's maturity; the suspect's education; the suspect's physical condition and mental health; and whether the suspect was advised of his *Miranda* rights. *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).

Whether Butler understood his *Miranda* rights is a factual determination subject to the presumption of correctness. 28 U.S.C. 2254(e)(1); *Mincey v. Head*, 206 F.3d 1106, 1131 (11th Cir. 2000). His competence to waive his rights is also a factual determination also entitled to the presumption of correctness. *See Demosthenes v. Baal*, 495 U.S. 731, 734-35 (1990) (holding state court's determination that petitioner was competent to

knowingly and intelligently waive his rights was factual, and therefore presumed correct under habeas statute). Whether Butler knowingly and intelligently waived his rights to the presence of counsel and to remain silent, and, if so, whether his subsequent admissions to the police were voluntary are questions of law. *Id.*

Butler had a full and fair opportunity to develop the basis for his claim at the pre-trial suppression hearing, and he failed to establish to do so. The state trial court concluded upon hearing testimony, that the trooper advised Butler of his *Miranda* rights and Butler freely and voluntarily waived his rights. Butler does not overcome the presumption of correctness of the state court's factual determinations.

Trooper Jarvis' testimony at the suppression hearing reflects that when Butler became aware that the officer saw the pill bottle containing the rocks of cocaine in the car, Butler immediately started dancing around and making awkward movements. Butler got back in the car and started making frantic and erratic movements. He was then taken out of the car and placed under arrest. Jarvis testified Butler was initially cooperative but then started resisting and became belligerent. Jarvis read Butler his *Miranda* rights, and Butler said he understood his rights. Resp. Ex. 1, V 3 R 39. Butler appeared to understand his rights because he was listening   very intently and would stop his antics when asked to do so by the officer. After being advised of his rights, Butler advised the officer that a friend had given him the crack cocaine and asked him to try it to see if he would like it and he had placed the pill bottle in the center console so he would not lose it. Jarvis' testimony reveals that Butler was very calm when he made those statements and understood what was going on explaining, "...one thing that he (Butler) was requesting was to make some sort of deal

and to possibly let his girlfriend go. So whenever he was asking something that would benefit him, such as making this deal or asking to let my girlfriend go, he was calm. Whenever he was told no, then he would start the antics of various sorts." Resp. Ex. 1, V 3, R 42.

The officer's impression was that the antics were an act because Butler was turning the antics "on and off."  Butler asked for a deal or a way to get out of an arrest because he said he did not want to go to jail and when Jarvis said no, Butler started the antics again. Butler appeared to know what he was doing and appeared to knowingly waive his rights in speaking with the officer. Resp. Ex. 3, R 43.

In *Blackburn v. Alabama*, 361 U.S. 199, 207-08 (1960), the Court held that evidence "establishing the strongest possibility that [the petitioner] was insane and incompetent at the time he allegedly confessed . . ." was sufficient to establish a due process violation when considered in light of the eight-hour sustained interrogation in a tiny room filled with police officers, the absence of friends, relatives or legal counsel, and the fact that the deputy sheriff composed the confession language. The Court reached its decision notwithstanding the fact that the interrogating officers thought the suspect was sane at the time he confessed. *Id.*; *see also, Townsend v. Sain*, 372 U.S. 293, 309 (1963) (noting that Court's finding in Blackburn did not depend on officers' stated belief that suspect did not appear insane or incompetent at the time the testimony), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). The Court rejected as dispositive the officers' claim that the petitioner appeared sane because he "talked sensible and give [sic] sensible answers," was clear-eyed, and did not appear nervous." *Blackburn*, 361 U.S. at 204.

The finding that Butler's waiver was a knowing waiver does not rest only on the officer's belief. Butler's own recall of events before and after his waiver supports the objectively reasonable determination that Butler appreciated the nature of his acts at the time.

Butler depends on Dr. Poorman's mental evaluation, which took place five days after the arrest. Although she felt Butler was not competent to proceed at that time because he was exhibiting signs of a bipolar disorder, manic phase, Dr. Poorman felt this was due to his being off his medications and if he were, this absence of medication could affect his understanding of his rights. Nonetheless, Dr. Poorman did not render an opinion on Butler's mental status at the time of his arrest. Dr. Poorman said she was not present when Butler made the incriminating statements so she did not know if they were voluntarily or involuntarily made. Her evaluation was limited to determining Butler's legal competency to understand proceedings in a courtroom and not his ability to understand *Miranda* rights five days earlier. Resp. Ex. 1, V 3 R 20.

So long as Butler understood the basic principles that he had the right to remain silent and whatever he said could be used against him, his waiver was constitutionally adequate. *See Colorado v. Spring*, 479 U.S. 564, 574 (1987) ("The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege.") Butler's own testimony served to show he had sufficient mental ability to comprehend his waiver. Although he claimed not to recall being advised of his rights, he testified in detail regarding the events at the scene.

For instance, Butler recalled that he and his girlfriend, the passenger, were leaving Denny's Restaurant when stopped at a traffic light and he saw two police cars with their lights flashing. Butler recalled his response, stating, "What I did was I remember flashing my turn indicators left and right and pushing my hazards and hitting my high beams trying to mimic the same thing that they were doing because I thought it was rude. I though it was rude or unnecessary to have all of the lights going like that at 4:00 in the morning." Resp. Ex. 1, V 3 R 23. Butler recalled turning his headlights to his parking lights, explaining he routinely did so when he saw someone standing in the road.

Butler said he saw the officer standing in front of his car motioning him to pull over. He remembered recalling an incident where a named individual had been killed in his neighborhood and how that affected him. Butler testified the trooper came over and said he did not have his lights on and to come with him. Butler got out of the car thinking the trooper was going to arrest him when he had not done anything, according to Butler. When they were in front of the car, the officer asked him to get his driver's license and registration. Maintaining he was afraid of the officer, Butler went to the passenger door, opened the glove box, and his girlfriend handed him the documents. Resp. Ex. 1, V 3 R 25.

According to Butler, something then told him to get in the car which he did. He said the officer put a gun to his head and told him to get on the ground. He also remembered the officer pulled out a prescription bottle and asked what was in it. Butler testified he could not remember exactly what he said or what happened; however he recalled being placed under arrest and taken to the patrol car. On cross-examination, Butler admitted he remembered what led up to the stop, the details of the stop, and events leading to his

arrest. He admitted he basically remembered everything but being read his *Miranda* rights

and making the incriminating statements. Resp. Ex. 1, V 3 R 27. The state court concluded

based upon these numerous details that Butler's statement was voluntary and made after

*Miranda* was given:

> As to the Fifth amendment as to statements, his credibility is born out by your recitation of the events in that regard. The only thing that is clear is that you have a selective memory. As to the *Miranda* and as to the statements after *Miranda,* you don't remember. You went from being prompted by one question from me, you went through a 10 minute dissertation of everything that happened with great specifics, with how you proceeded with caution, how you knew it was 4:00 a.m., about how you were scared of the guy, and what went through your mind related to Tyrone Lewis, that you were coming from Denny's that you saw the tow truck, I could go on and on, even giving us some information about how your eyes hurt when you go to rave clubs.

> The officer's testimony dovetails with the observations. You had a memory of everything that occurred. You have a recollection of everything that occurred except selectively the issues related to any statements that you might have made and the reading of *Miranda.* He (Trooper Jarvis) has credibility. His testimony was that you were there, you saw it, you heard it, you were able to respond to his questions, and, in fact, you were able to engage in goal directed activity by seeking to negotiate on behalf of the person that was with you. It is clear that you were oriented to time, 4:00 a.m., to circumstances, and to the questions that he was asking.

> Your selective memory aside, there has been no violation of *Miranda.* The fact that you have a mental health condition and that Dr. Poorman thought five days after the fact that you were not competent to proceed is a different analysis as to what you understood you were saying, whether the officer read you *Miranda* and you freely and voluntarily waived your rights. There is no Fifth Amendment violation and the motion to suppress as to that is denied as well.

(Reps. Ex. 1, V 3 R 52-55)

The state decision resulted in a reasonable application of *Miranda* and its progeny,

and a reasonable determination of the facts in light of the evidence. It is objectively

reasonable to conclude from the officer's testimony, as well as Butler's own recall, that Butler was advised of his constitutional rights, he was coherent and articulate and had full awareness of the nature of the rights being abandoned and the consequences of his decision to abandon them, Moran, 475 U.S. at 421, and his waiver was given knowingly and intelligently.

Coercive police activity is a necessary element for finding that a confession was involuntary. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). The physical and mental condition of a suspect is not in and of itself dispositive of an inquiry into voluntariness. See *Connelly*, 479 U.S. at 165 ("While mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessor's state of mind can never conclude the due process inquiry."). "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Connelly,* 479 U.S. at 164 (holding that confession given by a defendant who suffered from schizophrenia was voluntary because there was no police coercion, even though the defendant believed that the voice of God was commanding him to confess).

Butler presented the state court no evidence of police coercion which would have caused "his will to be overborne." Based on the totality of the circumstances, it is objectively reasonable to conclude that Butler's waiver of his *Miranda* rights was knowing and intelligent and his statements were free and voluntary.

Ground two does not warrant habeas corpus relief.

Ground Three

-18-

Butler accuses the state of not timely disclosing exculpatory evidence and knowingly using perjury to obtain his conviction. Butler claims the cocaine was in a dark orange prescription bottle, and the trooper at the suppression hearing switched it to a clear vitamin bottle from Albertson's. Butler further alleges that a few minutes before trial, the prosecutor provided him a police report of officer Rogler. According to Butler, the latter's report indicated the trooper summoned him to his car and showed him a prescription bottle and the report did not indicate the bottle was transparent or that two small rocks of cocaine could be seen [inside]. Butler concludes that the state intentionally failed to disclose the report until the day of trial so that Butler could not present the officer as a defense witness to show the trooper switched the bottle. All of these allegations are procedurally barred.

Even from the allegations in the petition it can be seen Butler knew of officer Rogler's report when he proceeded to trial, and Butler did not raise at trial and on direct appeal a *Brady v. Maryland*, 373 U.S. 83 (1963), claim. His arguments on appeal advanced a state law-based discovery violation concerning the timing of the disclosure by the state of the report. Butler did not alert the state trial and appellate courts that he was raising a *Brady* violation regarding officer Rogler's report.

Moreover, Butler knew of his theory of switched bottles when he proceeded to trial. Butler did not raise at trial and on direct appeal a claim of knowing use of perjured testimony of the trooper by the state, working a waiver and procedural default under state law. Because the issues could, if at all, have been raised at trial and on direct appeal, the claims are not cognizable in a postconviction motion in Florida. *See e.g., Rose v. State,* 675 So. 2d 567, n.1 (Fla. 1996)(movant's claims which were or should have been raised on

appeal, including a *Brady* claim concerning Rose's statements to police, were procedurally barred); *Manley v. State*, 705 So. 2d 691 (Fla. 5th DCA 1998)(claims state withheld impeachment evidence concerning state's witness and trial court erred in striking witness at trial were procedurally barred from consideration in collateral attack proceeding, where claimant made no showing why those issues should not have been raised on direct appeal); *Spencer v. State*, 842 So. 2d 52, 60 (Fla. 2003) (substantive prosecutorial misconduct claims raised in a rule 3.850 motion were procedurally barred (citing *Smith v. State*, 445 So. 2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."); *Ogden v. State*, 494 So. 2d 280 (Fla. 2d DCA 1990)(defendant's allegation of possible perjury could have or should have been raised on appeal and was not proper basis for postconviction relief).

    In his rule 3.850 motion, Butler asserted that the state deliberately disclosed officer Rogler on the day of trial to prevent him from providing testimony that would impeach the trooper. Butler raised his claim of prosecutorial misconduct in terms of newly-discovered evidence in his rule 3.850 motion. The postconviction court, however, pointed out that the state had disclosed the report and its intention not to use the incriminating testimony officer Rogler could provide, and Butler declined the trial court's offer to postpone trial to permit Butler to depose the witness. The postconviction court held in its detailed denial that the officer's testimony did not qualify as newly-discovered evidence. The ensuing silent affirmance of the denial of rule 3.850 relief rests upon independent and adequate procedural grounds barring review of Butler's claim of knowing use of perjured testimony.

*Ylst v. Nunnemaker*, 501 U.S. 797 (1991); *see also, Harmon v. Barton*, 894 F.2d at 1270

(where state trial court finds procedural default, state appellate court's silent affirmance is

a finding of procedural default by the last state court to rule on the question). By proceeding

to address his rule 3.850 claim that the state suborned perjury, the postconviction court

need not have feared forfeiture of the procedural bar. Where a state court has ruled in the

alternative, addressing both the independent state procedural ground and the merits of the

federal claim, the federal court should apply the state procedural bar and decline to reach

the merits of the claim. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.), *cert. denied*, 513

U.S. 1061 (1994).

Even if ground four were not procedurally barred, the claim has no merit upon

application of the deferential AEDPA standards of review to the state court decision in

Butler's postconviction proceeding. *Brady v Maryland*, 373 U.S. 83 (1963), held the

suppression by the prosecution of evidence favorable to an accused upon request violates

due process where the evidence is material either to guilt or to punishment, irrespective of

the good faith or bad faith of the prosecution. *In Strickler v. Greene*, 527 U.S. 263, 281-282

(1999), the Supreme Court set out the three components or essential elements of a *Brady*

prosecutorial misconduct claim: the evidence at issue must be favorable to the accused,

either because it is exculpatory, or because it is impeaching; the evidence must have been

suppressed by the state, either willfully or inadvertently; and prejudice must have ensued.

*Strickler*, 527 U.S. 263 at 281-282.

To the extent Butler suggests the state had a constitutional obligation to furnish him

evidence which he does not show to be favorable to him, he is wrong. There is no general

constitutional right to discovery in a criminal case, and Brady did not create one. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).

Moreover, it is objectively reasonable to conclude there was no *Brady* violation as there was no exculpatory evidence which the state failed to provide Butler. Made aware of the report of officer Rogler, Butler waived the opportunity to pursue information about the report, declining the trial court's officer to postpone the trial. There is no *Brady* violation if either the defendant or his attorney knows before trial of the allegedly exculpatory information. *Felker v. Thomas*, 52 F.3d 907, 910 (11th Cir. 1995).

Moreover, Officer Rogler's report did not state that the trooper had transferred the cocaine to another bottle. Butler did not show there was a reasonable probability that the result of the trial would have been different if the report of officer Rogler had been disclosed to him earlier. Butler can gain no basis for his claim by framing the claim in terms of knowing use of perjured testimony.

The Supreme Court has held a conviction obtained by knowing use of perjured testimony by the prosecution "must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Napue v. Illinois*, 360 U.S. 264, 272 (1959). To prevail on his claim, a petitioner must show that the testimony was false, that the state knew the testimony was false, and the false testimony was material. *See United States v. Bagley*, 473 U.S. 667 (1985); *Giglio v. United States*, 405 U.S. 150 (1972); *see also, Routly v. Singletary*, 33 F.3d 1279, 1286 (11th Cir. 1994). "[T]he falsehood is deemed to be material 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *United States v. Agurs*, 427 U.S.

97, 103 (1976). This reasonable likelihood standard imposes a "considerably less onerous" burden on the petitioner than the *Brady* standard. *See Stephens v. Hall*, 407 F.3d 1195, 1198 (11th Cir. 2005)(internal citation omitted). "There is no violation of due process resulting from prosecutorial nondisclosure of false testimony if defense counsel is aware of it and fails to object." *Routly*, 33 F.3d at 1286 (internal citations omitted).

Butler's speculation does not begin to show that the state used false testimony and did so knowingly. Moreover, his conjecture will not satisfy the materiality prong. Officer Rogler's report does not establish the trooper perjured himself, and Butler's leap to conclusion in such regard does not establish there is any reasonable likelihood that purported false testimony could have affected the judgment of his jury. *See United States v. Agurs,* 427 U.S. at 103.

Butler also raises a claim of an illegal search and seizure. This claim is foreclosed by *Stone v. Powell*, 428 U.S. 465 (1976), which bars federal habeas corpus review of Butler's substantive Fourth Amendment claim because he had a full and fair opportunity to raise his Fourth Amendment claim in the state courts. *See also, Peoples v. Campbell*, 377 F.3d 1208 (11th Cir. 2004)(consideration of claim evidence admitted at trial was fruit of illegal arrest could not be considered on a habeas corpus petition so long as the state courts had afforded a full and fair opportunity to litigate that claim)

Ground three does not warrant habeas corpus relief.

Butler asserts that the trial court failed to renew the offer of assistance of counsel, resulting in a denial of due process. This ground is procedurally barred because Butler did not raise a constitutional due process claim relative to the renewal of counsel both at trial

and then on direct appeal. His state law arguments did not alert the state courts to a claim of a due process deprivation. As a result, Butler could not restate his issue in constitutional terms in his postconviction motion.

The postconviction court held that his rule 3.850 claim framed in due process terms, was barred. The silent affirmance rests on independent and adequate procedural ground barring federal review of ground four. Butler does not make the required showing to lift the state bar.

Even if this claim is considered by this Court, Butler does not show that the state court decision resulted in an unreasonable application of clearly established federal law as determined by the Supreme Court. In *Faretta v. California,* 422 U.S. 806 (1975), the Court held a defendant may waive the right to court-appointed counsel and choose to represent himself as long as the waiver is knowing and intelligent. Butler does not claim that his waiver was other than knowing and intelligent.

Although Florida Rule of Criminal Procedure 3.111(d)(5) requires the court to advise a pro se defendant of the right to counsel at each subsequent stage of a trial, that in situations where a defendant has properly waived the right to counsel, a trial court may proceed with the stage where counsel was waived without further offer of counsel. *Traylor v. State*, 596 So. 2d 957 (Fla. 1992). Butler was offered counsel prior to voir dire, and under state law, the state decision settles that the trial court was not required to offer counsel during the same stage of the proceeding where he waived his right to counsel. *See Knight v. State,* 770 So. 2d 663, 670 (Fla. 2000)(noting defendant's right to have court-appointed counsel discharged and right to represent himself becomes meaningless and a source of

gamesmanship if trial court has to offer counsel to the defendant each time he appears in court). Further, it is objectively reasonable to conclude sufficient inquiries were made as required by *Faretta* and its progeny in Butler's case.

Reply

In his reply, Butler claims that the Respondent did not address his ineffective assistance of counsel claim that his counsel, appointed after the trial, and at Butler's request, failed to file a motion for a new trial based on Butler's allegation that Trooper Jarvis switched bottles. As shown above, Butler's claim related to Trooper Jarvis' switching the bottles has no merit.

The Eleventh Circuit has set forth the applicable legal principles for reviewing a claim of ineffective assistance of appellate counsel:

> A defendant has a right to counsel to aid in the direct appeal of his or her criminal conviction. *See Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). This right to counsel is violated when appellate counsel is ineffective. *Id.; Alvord v. Wainwright*, 725 F.2d 1282 (11th Cir. 1984). This Circuit has applied the Supreme Court's test for ineffective assistance at trial*, see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to guide its analysis of ineffective assistance of appellate counsel claims. *See Orazio v. Dugger*, 876 F.2d 1508 (11th Cir. 1989). Therefore, [Petitioner] must show that his appellate counsel's performance was deficient and that this performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

*Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 112 S.Ct. 981 (1992).

With regard to the performance prong, the Eleventh Circuit has stated:

> *Strickland* held that in evaluating whether the appellate counsel's performance was deficient, counsel's performance must be evaluated for "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065. Courts should presume effectiveness and should avoid second-guessing with the benefit of hindsight. *Id.* at 689, 104

-25-

S.Ct. at 2065. Specifically, *Strickland* encouraged reviewing courts to allow attorneys broad discretion to represent their clients by pursuing their own strategy. However, the Court realized that merely invoking the word "strategy" to explain errors was insufficient since "particular decision[s] must be directly assessed for reasonableness [in light of] all the circumstances." *Id.* at 691, 104 S.Ct. at 2066.

The Supreme Court, on at least two occasions, has had an opportunity to explain the parameters of what constitutes a reasonable strategy for appellate advocates.In *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), the Court held that the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue. The Court suggested that effective advocates "winnow out" weaker arguments even though the weaker arguments may be meritorious. Id. at 751-52, 103 S.Ct. at 3313. The Court in *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), held that an appellate advocate who reviewed the entire record, thought about various claims, and then chose to pursue thirteen claims on appeal had furnished effective appellate assistance. The Court recognized that even though a non-appealed issue might have been successful, the appellate advocacy had to be judged in its entirety.

*Heath*, 941 F.2d at 1130-31.

Further, the Court has set forth the analysis for the prejudice prong of the two-part test:

A petitioner has satisfied the prejudice prong of *Strickland* when he or she can show that the appellate counsel's performance was sufficiently deficient to deprive the defendant of "a trial [or an appeal] whose result [was] reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. In the context of an ineffective assistance on appeal claim, this Court in *Cross v. United States*, 893 F.2d 1287 (11th Cir. 1990), held that in order to determine prejudice the court must first perform "a review of the merits of the [omitted or poorly presented] claim." *Id.* at 1290. If the Court finds that the neglected claim would have a reasonabe probability of success on appeal, then according to *Cross* it is necessary to find "appellate counsel's

-26-

performance prejudicial because it affected the outcome of the appeal." *Id.*

*Id.* at 1132.

Butler cannot meet the *Strickland* standard of showing prejudice. He cannot that the outcome of the proceeding would have been different had counsel filed the motion for a new trial because the underlying claim regarding Trooper Jarvis had no merit.

Accordingly, the Court orders:

That Butler's petition is denied, with prejudice. The Clerk is directed to enter judgment against Butler and to close this case.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED in Tampa, Florida, on December 3, 2007.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
David A. Butler